UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| TETYANA McILVAINE AND<br>MICHAEL McILVAINE, | ) <br>) <br>) | |
| PLAINTIFFS | ) <br>) | |
| v. | ) <br>) | No. 2:12-cv-111-DBH |
| FORD MOTOR COMPANY, | ) <br>) <br>) | |
| DEFENDANT | ) | |

DECISION AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

This lawsuit arises from serious physical injuries that one of the plaintiffs suffered when the throttle on the 1995 Ford F-150 truck she was driving remained open despite all her attempts to brake the vehicle. The accident occurred in Maine, and that is where the plaintiffs filed suit. The two plaintiffs, husband and wife, both of whom live in New Hampshire, sued the defendant Ford Motor Company, a Delaware corporation with a principal place of business in Michigan, claiming that the truck was defective and unreasonably dangerous. Ford removed the case from Maine Superior Court based on diversity of citizenship. Ford then moved for summary judgment, claiming that New Hampshire law applies and that under New Hampshire law

the plaintiffs have insufficient expert opinion testimony to proceed. Ford's motion for summary judgment is **DENIED**.[1]

### CHOICE OF LAW

I apply the law of the forum state—Maine—in determining choice of law. York Ins. Co. v. Schultz, 307 F. Supp.2d 108, 111 (D. Me. 2004). The plaintiffs argue that Maine law applies; Ford argues that New Hampshire law applies.

For choice of law, Maine applies the principles of the Restatement (Second) of Conflict of Laws. According to section 145, the factors to consider are:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

Here, the accident and injury occurred in Maine. The plaintiffs, owners of the truck, were residents of New Hampshire, and the truck was titled there. The plaintiff worked in Scarborough, Maine. Although her husband was the primary driver (and he worked in New Hampshire), the injured plaintiff used the truck once or twice per week. At the time of the accident, she was on her way to Portland, Maine to shop. The plaintiffs had other business dealings in Maine (pharmacy; library; savings bank; credit union), since they lived within two miles of the Maine border. The original purchase of the truck (not by the

---

[1] As a result of the Local Rule 56 pre-filing conference, the parties have simplified the record substantially with stipulations, for which the Court is grateful.

plaintiffs) was in the Midwest.   If Ford's conduct caused the accident and injury, that conduct was in neither Maine nor New Hampshire, but rather at the point of manufacture.   Ford is incorporated in Delaware and has a principal place of business in Michigan.   Ford has no particular connection to New Hampshire.   There is no relationship between the plaintiffs and Ford.

In a claim for personal injuries (as here), Restatement (Second) of Conflict of Laws § 146 provides that "the local law of the state where the injury occurred determines the rights and liabilities of the parties, *unless*, with respect to the particular issue, some other state has a more significant relationship . . . to the occurrence and the parties," and refers to a list of principles listed in section 6 of the Restatement.   State Farm Mut. Ins. v. Koshy, 995 A.2d 651, 660 (Me. 2010); Flaherty v. Allstate Ins. Co., 822 A.2d 1159, 1166 (Me. 2003).   So the question is whether New Hampshire has a more significant relationship than Maine.   None of the principles in section 6[2] calls for applying anything other than local, *i.e.*, Maine law.   This case is about an accident and injury occurring on Maine's roads, where Maine has a clear interest in safety.   New Hampshire does not have a more significant

---

[2] "[T]he needs of the interstate and international systems"; "the relevant policies of the forum"; "the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue"; "the protection of justified expectations"; "the basic policies underlying the particular field of law"; "certainty, predictability and uniformity of result"; and "ease in the determination and application of the law to be applied."   Restatement (Second) of Conflict of Laws § 6.

3

relationship merely because of the plaintiffs' residence[3] and the vehicle's title state. I therefore apply Maine law.[4]

**QUANTUM OF PROOF**

The plaintiffs claim liability under 14 M.R.S.A. § 221, Maine's strict liability statute, for a manufacturing defect. (They do not claim a design defect.) Ford argues that because the plaintiffs' expert cannot specify *what* was the manufacturing defect or what caused the throttle to remain open, it is entitled to summary judgment. Ford is wrong.

Maine's Law Court has adopted the approach of Restatement (Third) of Torts: Products Liability § 3. Estate of Pinkham v. Cargill, Inc., 55 A.3d 1 (Me. 2012). Section 3 provides:

---

[3] New Hampshire has announced that "domicile is not enough standing alone to warrant application of New Hampshire law" when a motor vehicle accident occurred in Maine and the parties were both domiciled in New Hampshire. LaBounty v. American Ins. Co., 451 A.2d 161, 164 (N.H. 1982).

[4] In applying Maine's choice of law rules, the First Circuit has said that the applicable law is that of the state where the conduct and injury occurred, "subject only to rare exceptions." Ricci v. Alternative Energy, Inc., 211 F.3d 157, 165 (1st Cir. 2000) (quoting Restatement (Second) of Conflict of Laws § 145 cmt. d). Here, the *injury* occurred in Maine. If there was a manufacturing defect, that *conduct* occurred outside of both Maine and New Hampshire. According to the Restatement, when conduct and personal injury occur in different states, "the local law of the state of injury will usually be applied to determine most issues involving the tort." Restatement (Second) of Conflict of Laws § 146 cmt. e. That calls for applying Maine law. In any event, the location of Ford's conduct, which was not in New Hampshire, does not call for application of New Hampshire law. Ford argues nevertheless that "New Hampshire has a strong interest in the uniformity and predictability of applying its expert requirements to products that operate primarily within its borders," and that Maine's arguable "interest in permitting plaintiffs to proceed to a jury of their peers without direct evidence of a defect" "is considerably weaker." Ford Motor Co.'s Mem. of Law in Support of Mot. for Summ. J. at 8 (ECF No. 30). I am doubtful that these evidentiary rules are the proper level for applying the policy analysis, see Restatement (Second) of Conflict of Laws § 146 cmt. e ("an important factor in determining which is the state of most significant relationship is the purpose sought to be achieved by the rule of tort law involved"); § 6 cmt. h ("there is good reason for the court to apply the local law of that state which will best achieve the basic policy, or policies, underlying the particular field of law involved"). Those tort law policies are best achieved by applying Maine law. Given the location of injury (Maine) and conduct (not New Hampshire), they certainly do not call for applying New Hampshire law. See also LaBounty, 451 A.2d 163-64.

> It may be *inferred* that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
> (a)    Was of a kind that ordinarily occurs as a result of product defect; and
> (b)    Was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

(emphasis added).  According to comment b:

> The most frequent application of this Section is to cases involving manufacturing defects.  When a product unit contains such a defect, and the defect affects product performance so as to cause a harmful incident, in most instances it will cause the product to malfunction in such a way that the inference of product defect is clear.  From this perspective, manufacturing defects cause products to fail to perform their manifestly intended functions.

Restatement (Third) of Torts: Products Liability § 3 cmt. b.

Here, a jury could find that the incident was "of a kind that ordinarily occurs as a result of product defect."  See Pls.' Opposing Statement of Material Facts ¶ 19 (ECF No. 33); Dep. of Luka Serdar at 109, 119-122 (ECF No. 33-5).  In that event, the Law Court says:

> Whether there is proof that an injury was not "solely the result of causes other than [a] product defect existing at the time of sale or distribution, "Restatement (Third) of Torts: prods. Liab. § 3(b), is a question of fact for a jury to decide.

Estate of Pinkham, 55 A.3d at 8.  That is exactly the case here.

I view the facts in the light most favorable to the plaintiffs since they are opposing the summary judgment motion.  (Most of the facts are stipulated for purposes of the motion.)  After passing a vehicle, the plaintiff driver discovered that the truck did not slow down when she removed her foot from the

5

accelerator.  She tried to brake, using both feet, and still could not bring the truck to a stop.  To avoid missing a curve and going into the Saco River, she drove into a tree, severely injuring herself.  The condition of the brakes shows that she was applying them for a prolonged period of time, and there were no mechanical defects in the braking system.  According to the stipulated facts, "[s]omething was overriding the force being applied to the brakes, or the truck would have stopped.  Given the damage to the Truck, at the time of inspection the accelerator pedal could only be moved a limited amount.  At the time of inspection, the accelerator pedal could not be actuated.  It did not appear to [Ford's expert] that there were any parts on the throttle body that were not original.   [Ford's expert] saw no evidence that there had ever been any tampering with the throttle body of the Truck.  The operation of the throttle at the time of the crash cannot be replicated now due to the damage to the truck." Pls.' Opposing Statement of Material Facts ¶¶ 93-98.  That is sufficient to go to a jury given Maine's adoption of Restatement (Third) of Torts: Products Liability § 3.

Ford speculates that something belonging to the injured plaintiff (her bag with a strap or a laptop computer) could have become entangled with the accelerator, but there is no evidence that in fact they did so.

Ford also challenges the inference under section 3 because of the age of the truck.  But although the truck was manufactured in 1995, it had only

27,975 miles on it at the time of the accident, and had had no problems.[5]  In other words, the only potential causes of the accident on this record are that there was some manufacturing defect that caused the throttle to fail to operate properly at the time of the accident, something unknown happened to the throttle during the fourteen years since the truck was manufactured (before the accident, there were no relevant issues with the operation of the truck), or the injured plaintiff somehow permitted something she carried into the cab of the truck to interfere with the throttle's operation.  Under Law Court precedent, whether causes other than a defect caused the injury is a question for the jury.

Ford argues that section 3 is "limited to situations in which a product fails to perform its manifestly intended function, thus supporting the conclusion that a defect of some kind is the most probable explanation," Ford Motor Co.'s Mem. of Law in Support of Mot. for Summ. J. at 13 (accurately quoting cmt. b of Restatement (Third) of Torts: Products Liability § 3).  But that is precisely the plaintiffs' claim here—that the throttle is supposed to close, not remain open, when the driver's foot is removed from the accelerator.

Ford also argues that section 3 is "limited to situations where the product itself is destroyed or lost in the accident, and where the alleged defect is within the common understanding of a lay jury," Ford Motor Co.'s Mem. of Law in Support of Mot. for Summ. J. at 12-13, and refers to a 1992 First

---

[5] In 2008, the plaintiffs obtained it from a relative in Ohio, who was elderly and had driven it conservatively and little.  It had 8,740 miles on it when they first titled it in New Hampshire. There also has been no significant change in the condition of the product, see 14 M.R.S.A. § 221.

Circuit decision Walker v. General Elec. Co., 968 F.2d 116, 120 (1st Cir. 1992) and a 2004 decision from this court TNT Road Co. v. Sterling Truck Corp., 2004 WL 1626254, *7 (D. Me. July 19, 2004). The Law Court's 2012 decision in Estate of Pinkham governs me here on this issue of Maine law and supersedes those pronouncements.[6] Moreover, the stipulation I have quoted above shows limitations on the plaintiffs' expert's post-accident inspection of the throttle because of the accident, such that it appears that the throttle has been partially destroyed in the accident.[7]

The defendant's motion for summary judgment is **DENIED**.

**SO ORDERED.**

**DATED THIS 13TH DAY OF FEBRUARY, 2013**

/S/D. BROCK HORNBY
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[6] In any event, TNT Road said only that Restatement (Third) of Torts: Products Liability § 3 applied to the facts of that case, not that it could not apply in a case such as this. TNT Road, 2004 WL 1626254, *7. In Walker, the plaintiff's expert conceded that a toaster malfunction could have been simply wearing out after six to eight years of daily use. Walker, 968 F.2d at 120.

[7] There is some ambiguity in the record concerning what could be determined from the truck's condition after the accident. On the one hand, when the plaintiffs' expert examined it, "[g]iven the damage to the Truck, at the time of inspection the accelerator pedal could only be moved a limited amount," "[a]t the time of inspection, the accelerator pedal could not be actuated," "[t]he operation of the throttle at the time of the crash cannot be replicated now due to the damage to the truck," and "[t]he connecting link that connects the two return springs [in the throttle system] of the Truck is missing," Pls.' Statement of Material Facts ¶¶ 94, 95, 98, 102 (stipulations), but at the time of Ford's expert's inspection, "the throttle cable moved freely and the throttle return springs functioned properly." Ford Motor Co.'s Statement of Material Facts ¶ 28. I construe the record in the plaintiffs' favor in this regard.